T. S. Burns, Respondent, v. C. H. Peck, Appellant.

### MAY 5, 1885.

1. Evidence—Corroborative—Agency.—Upon an issue as to whether a certain oral contract had been made, where the only direct evidence is that of the plaintiff and the defendant, who make conflicting statements, evidence that the defendant's agents in the exercise of their duties had subsequently recognized and partly executed the contract, is relevant as tending to corroborate the plaintiff.

2. Appellate Practice.—A judgment will not be disturbed, on appeal, unless error manifestly prejudicial to the appellant has been committed, where the jury in three successive trials have found for the respondent the full amount claimed.

Appeal from the St. Louis Circuit Court, Lubke, J.
*Affirmed.*

Krum & Jonas, for the appellant.

H. M. Wilcox, for the respondent.

Thompson, J., delivered the opinion of the court.

The amount in controversy in this case is not large, and no important legal principle is involved; yet we have had a good deal of difficulty in bringing our minds to a satisfactory conclusion concerning it. It has been tried three times, before three different juries, the plaintiff in each case recovering a verdict for the full amount claimed. The first verdict was set aside by the trial court, as being against the weight of the evidence. The court was prohibited by the statute from setting aside the second verdict on this ground, and accordingly overruled the defendant's motion for a new trial. From the judgment entered on that verdict an appeal was taken to this court, and we reversed the judgment and remanded the cause, on the ground that the court erred in admitting the unsworn declarations of the defendant's manager, and also those of his cashier, to the general effect that the old indebtedness of the Windsor Flats Company would be paid by the defendant.—*Burn* v. *Peck,* 15 Mo. App. 580. We took the view that an agent cannot bind his principal to pay the debt of a third person by unsworn declarations or admissions made by such agent, unless it appeared that the agent had express authority from his principal to make such admissions.

The cause went back to the circuit court, and was tried a third time, and now before a special jury, resulting in the same verdict as before. The case was put to the jury on substantially the same evidence as at the second trial, with the exception that the court eliminated the declarations of the defendant's cashier and those of his business manager, in conformity with the opinion of this court.

A re-examination of the case has given me some doubts as to the soundness of our conclusion on the former appeal. The declarations of the defendant's agents were

made while those agents were making or ordering payments, or otherwise acting about the business which the plaintiff had with the defendant, and I am not clear that they might not have been regarded as a part of the *res gestae*, and hence competent evidence in corroboration of the testimony of the plaintiff to the effect that the defendant had made an oral promise to him that if the plaintiff would remain in the defendant's employ, and would not bring an action for what was due him by the Windsor Flats Company, the defendant would pay him what was so due. At all events, we are all of opinion that we went as far in the former opinion as we can go in stripping the plaintiff's evidence of the surrounding features of the case which go to characterize his testimony, and to render the statements made by him as a witness, which were strictly and pointedly contradicted by the testimony of the defendant, more or less probable. In other words, here is a case, as it now looks to us, where the plaintiff seeks to recover of the defendant upon an oral contract made between the two when no one else was present. He swears pointedly to the making of this contract and to the consideration therefor. The defendant as pointedly swears that he did not make it. Now, throwing the testimony of these opposing parties into the scale, equally interested, and perhaps equally credible, a case is presented where the plaintiff could not recover because he could not produce a preponderance of evidence over that produced by the defendant. In such a case, the plaintiff is manifestly entitled to have his story judged by the surrounding circumstances, and the triers of the fact, anxious to get at the real truth of the matter, would desire to be told what those circumstances were.

If, then this case is seen and judged in the light of its surroundings, it is something like this : There was a corporation called the Windsor Flats Company, owning and operating a hotel ; the defendant was a large stock-holder therein, and one of the defendant's sons was the manager thereof, the plaintiff was employed by this company

as an engineer, to attend to its steam boilers and its plumbing and heating arrangements. This position was one of some responsibility, which required some skill and some fidelity. The company became embarrassed, but the plaintiff with other of its employes nevertheless continued to work for it, in the hope that they would ultimately be paid, until the company had become indebted to him in the sum of about $600. Now, the defendant, in addition to being a large stockholder in the company, also held a deed of trust upon the hotel property to secure an indebtedness of the company. Seeing that his son was not managing the property successfully, and desiring to change its management, he foreclosed this deed of trust and became the purchaser of the property at the trustee's sale. Now, the problem was before him of continuing to operate the hotel so as not to disperse its guests, break up its patronage, or injure its good will. In order to do this, it was desirable to retain the old employes in their situations ; and, being a just man, he no doubt, desired to see them paid so far as he could bring about that result without loss to himself. He therefore made an arrangement with the Windsor Flats Company, under which the bills receivable, that is accounts against guests of the hotel, were turned over to him, he in exchange, giving his check for the face value of them, and directing that the money thus advanced should be distributed in the payment of the help. This money was distributed, and it sufficed to pay what was due to the ordinary servants but left the plaintiff's claim unpaid. The above is believed to be a fair statement of the facts which the plaintiff's evidence tended to show. At this juncture the plaintiff's claim comes in. According to his story, he went to Mr. Peck and threatened to quit the hotel and to bring suit against the Flats Company, unless Mr. Peck would agree to pay what the Flats Company owed him ; whereupon, in consideration of his agreement to continue in Mr. Peck's employ at the hotel, as he had been before, and of his agreement to forbear bringing suit, Mr. Peck told him that he would see

that what the Flats Company owed him was paid. It is not claimed or proved that Mr. Peck collected enough money from the bills receivable which were turned over to him by the Flats Company to pay all the employes of the hotel, including the plaintiff. It is not alleged or proved that Peck agreed with the Flats Company, when he received these bills receivable, that he would pay what was due to all the servants of the company. The petition recites that, after becoming the purchaser of the hotel at the trustee's sale, the defendant continued the same business, retaining most of the help, "assuming all liabilities of said Windsor Flats Company for wages and claims due said help at the time of said sale, and subsequently discharged some of said liabilities." It is to be observed that this does not amount to an allegation that for a good consideration, the defendant agreed with the Windsor Flats Company, or with this plaintiff, to pay the debts due to the employes of the Flats Company, of whom this plaintiff was one; nor was there any evidence of such an agreement between the defendant and the Flats Company; nor was the question of the existence of such an agreement put to the jury. The question put to the jury was narrowed down to the question whether the defendant in consideration of the plaintiff's agreeing to serve him in the same capacity as he had served the Flats Company, agreed to pay him what the Flats Company owed him and also wages at the rate of $60 per month. Now, as it does not appear that the plaintiff's services were worth more than $60 a month, or that other men as competent and faithful as he could not have been obtained to render the same services at the same price, I must say that the suggestion that the defendant, for such a consideration, agreed to pay the debt of another, for which he was in no wise responsible in law, would, if standing alone, seem highly absurd. But as this indebtedness had been incurred by his son in the management of property in which he was a large stockholder, he may have felt and there may have been a strong moral obligation to pay, the existence of which would render the

making of such a promise entirely probable. It there-
fore seems that it was the right of the plaintiff to have
the story told by him seen in connection with all the cir-
cumstances surrounding the transaction, and to have the
jury judge of its probability in the light of those circum-
stances.

Coming now more closely to the objections made by
the appellant, as we gather them from his brief, we may
say of the first one that it is substantially disposed of in
what has already been said. Undoubtedly, the plaintiff's
petition contained a great deal of surplusage, relating, as
the defendant characterizes it, to the defendant's supposed
trusteeship. The petition in this regard is open to the
objection of pleading matters of evidence. The defend-
ant could have had these matters stricken out on motion.
Instead of this, he chose to join issue upon them, and as
in the view we take of the case, though matters of evi-
dence, they were matters of relevant evidence, being
fairly corroborative of the constitutive facts charged by
the plaintiff, perhaps in the nature of matters of induce-
ment leading up to it,—no harm was done to the defend-
ant by the fact that the plaintiff pleaded it; and, as we
have stated, he had a right to prove it.

We see no error, for the reasons already stated, in ad-
mitting the testimony of Simms, to the effect that the de-
fendant had stated to him, Simms, that the help of the
old Flats Company would be paid. It was an admission
of the defendant, and was corroborative of the plaintiff's
testimony. The same may be said of the testimony of
Simms to the effect that most of them were paid by himself
while acting as the defendant's cashier. We cannot see
the force of the objection that the court committed error
in permitting that portion of the deposition of Simms to
be read against objection, which referred to the payments
made by Simms to the plaintiff on account of the indebt-
edness of the Flats Company upon the orders of Charles
H. Peck, Jr., who was then representing the defendant
as manager of the hotel. We think that the plaintiff was
entitled to the benefit of this evidence. He had testified

that the defendant had promised to pay him this indebtedness. The defendant had denied this. The solution of the question by the jury was thus left in great doubt. Now if after the defendant had made this promise, his son, acting as the manager of his hotel, had actually performed it in part, that we think was a very relevant and important circumstance. We think it a very strained position to say that in order to make this testimony relevant, it was necessary to show that Peck, Jr., had express authority from the defendant to make such payments. A presumption of right acting always arises in regard to the conduct of men, unless circumstances exist which repel it. If Peck, Jr., made these payments while acting as manager of the defendant, he presumptively did it with the defendant's authority, as the naked presumption cannot be indulged in that he gave away the defendant's money without authority. Then how could the plaintiff show affirmatively that such authority existed? The fact of his making the payments was presumptive evidence of the authority, and if it did not exist, it was for the defendant to show it.

We think, in view of the whole evidence, that the comments made by the court as to the nature of the testimony which had been given, which appear on page 16 and 17 of the record, were not prejudicial to the defendant.

It is claimed that the court erred in refusing the following instruction: "The burden of proof in this case is on the plaintiff, and it is incumbent on him to satisfy the jury that the agreement alleged in his petition was actually entered into between himself and the defendant; merely from the fact that plaintiff was continued in the employ of the defendant, the jury cannot infer such an agreement as is asserted by plaintiff."

It will be perceived that it contains two elements: 1. That the burden of showing the alleged contract was upon the plaintiff. 2. That the jury could not infer its existence from the fact that the plaintiff continued in the defendant's service.

The first branch of it had already been given in defend-

ant's instruction numbered 5. We do not see that we can reverse the judgment for refusing to give the second branch of it. Although proper enough as a cautionary instruction, it is not likely that a special jury was so simple-minded as to ground their verdict on the idea that the mere fact that the plaintiff continued in the defendant's service after the defendant became the owner of the hotel, authorized them to infer that he had agreed to pay the defendant the debt due to him from the former owner of the hotel.

Finally, it is urged that it was error to give the following instruction at the request of the plaintiff :

"In order to ascertain whether such promise was or was not made by defendant, the jury may consider in addition to the evidence of plaintiff and defendant, on this particular point, all the facts and circumstances in evidence." Record, p. 92.

We think the plaintiff had a right to this instruction, for the reason we have stated in the former portion of this opinion. In view of the fact that the plaintiff has recovered three successive verdicts for the amount claimed by him, the last one before a special jury, upon testimony so pointedly in conflict with that given by the defendant that the successive juries could not have returned these verdicts if they had credited the defendant's testimony, we have felt that the present verdict should not be disturbed unless we could see plainly that error has intervened, such as was necessarily prejudicial to the defendant. As it is not clear to our minds that such error has intervened, we conclude it to be our duty to affirm the judgment. It is so ordered. All the judges concur.